IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ERLEND TANGEN,                    )
                                 )
    Plaintiff,                    )
                                 )
vs.                              )      Civil Action No. 12-0267-CG-M
                                 )
IDEACOM OF THE GULF COAST,        )
INC.                             )
                                 )
    Defendants.                   )

## ORDER

    This matter is before the court on the motion for summary judgment

filed by the defendant, Ideacom of the Gulf Coast, Inc. ("Ideacom").  Doc. 85.

The court has reviewed the parties' respective briefs (Docs. 87, 91, and 92),

and the case is now ripe for resolution.  For the reasons discussed below, the

court finds that Ideacom's motion is due to be **GRANTED IN PART** and

**DENIED IN PART**.

    Also before the court and ripe for resolution is Ideacom's motion to

strike (Doc. 93), which is hereby **DENIED** for the reasons set forth below.

## I. FACTUAL BACKGROUND

    Ideacom is a Daphne, Alabama, corporation which sells healthcare

communications systems to hospitals and nursing homes.  Doc. 91 at 2.  The

plaintiff, Erlend Tangen ("Tangen"), is a former Ideacom salesman who

entered into a written employment agreement with the defendant in

September 2002 (the "2002 Agreement").[1]  From 2002 until 2008, Tangen sold certain nurse call systems manufactured by Rauland-Borg Corporation, the Responder 4000 and Responder IV, for Ideacom.  Beginning in 2008 until he resigned in 2011, Tangen sold the Responder 5 system.  Id.

Tangen's responsibilities under the 2002 Agreement included estimating the costs of installing a call system and setting a proper purchase price, id. at 4, as well as overseeing the proper installation of the system and providing technical supervision of troubleshooting.  Doc. 14-1 at 1.  Tangen received a $33,000 base salary and a 5% commission on all sales, which was based upon the "list price" of the system being sold.  Id. at 2-3.  Half of the commission, or 2.5%, was paid to Tangen up-front when the customer signed a purchase order; the second 2.5% was paid after the customer paid its invoice in full.  Id. at 3; Doc. 91-2 at 11, 29-30.

In late 2008, Ideacom presented its sales force with a new formula for calculating sales commissions.  Doc. 91 at 6; Doc. 91-2 at 11.  The new policy was called the "Sales Compensation Program" and was effective for all new sales starting in January 2009 (hereinafter, the "2009 Program").  Doc. 14-2; Doc. 91-2 at 22-23.  Under the new 2009 Program, salesmen would still receive an up-front 2.5% commission when a customer signed a contract.  Id.  However, commissions at the end of a job were to be determined by the "final

---

[1] Ideacom disputes the validity of the 2002 Agreement, but has assumed its validity for the sake of argument at summary judgment.  Doc. 92 at 9.  Likewise, the court assumes that the 2002 Agreement is valid for summary judgment purposes.

mark-up percent" of the sale.  Doc. 14-2.  None of Ideacom's salesmen signed the 2009 Program.  Doc. 91 at 7; Doc. 87-6 at 48.  Tangen testified that although he did not agree with the new commission policy, he believed that his choice was to either accept it or leave, and he "felt it was beneficial to stay."  Doc. 87-6 at 50.

Tangen continued to sell call systems for Ideacom, and Ideacom continued to pay commissions to Tangen until he resigned in May 2011.  Doc. 91-1 at 3; Doc. 14 at 3.  Tangen now alleges that Ideacom has refused to pay him the commissions he earned on twelve sales in 2011, worth a total of $78,311.09.  Doc. 14 at 3.

On April 17, 2012, Tangen filed the instant lawsuit against Ideacom.  Doc. 1.  On May 29, 2012, he filed an amended complaint alleging a violation of the Alabama Sales Commission Act, Ala. Code §8-24-1 et. seq. (Count One); breach of contract (Count Two); and negligence (Count Three).  Doc. 14 Ideacom moved for summary judgment on April 22, 2013.  Doc. 87.

## II. IDEACOM'S MOTION TO STRIKE

Ideacom seeks to strike seven assertions found in Tangen's affidavit. (Ideacom's motion at Doc. 93; Tangen's affidavit at Doc. 91-1).  As a preliminary matter, the court notes that motions to strike are generally disfavored as time wasters that distract the court from the merits of a party's claim.  See e.g., Haynes v. Twin Cedars Youth & Fam. Servs., Inc., No. 5:10-CV-321 (CAR), 2012 WL 895699 at *5 (M.D. Ga. Mar. 15, 2012).  See also,

Vaughn v. City of Orlando, 2008 WL 3540434 at *2 (M.D. Fla. 2008).  As a result, motions to strike are infrequently granted.  Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F.Supp.2d 1345, 1348 (M.D. Fla. 2002).  See also, Austin S.I., Ltd. V. Barton-Malow Co., 799 F.Supp.2d 1135, 1145 (M.D. Fla. 1992).

        To the extent that Ideacom thought that Tangen's affidavit warranted a challenge, a footnote or two in its summary judgment brief would have sufficed.  See Northern Assur. Co. of America v. C&G Boat Works, Inc., 2012 WL 1712594 at *5 (S.D. Ala. 2012).  The court notes for the parties' future reference that, in the aftermath of the substantive 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, motions to strike summary judgment exhibits are no longer necessary.  As revised, Rule 56 provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).  The Advisory Committee's note specifies further that such an objection "functions much as an objection at trial, adjusted for the pretrial setting" and that "[t]here is no need to make a separate motion to strike."  Id., Advisory Committee's note.

## A. HEARSAY

        Citing the hearsay rule, Ideacom seeks to strike references to Tangen's deposition testimony in paragraphs 5, 9, and 10 of Tangen's affidavit.  Doc. 93 at 2, 5, 6, and 8 (underlining the words "As I said in my deposition").

Ideacom argues that "Tangen's reference to what people stated in a deposition is a hearsay statement." Id. at 2, 6, 8. Tangen's reference to his own deposition testimony is also a statement of a party-opponent and falls squarely within a hearsay exception. FRE 801(d)(2)(a). Thus, Ideacom's motion is denied as to this objection.

### B. BEST EVIDENCE RULE

Paragraph 11 of Tangen's affidavit contains a list of the 12 sales for which Tangen alleges that he is owed a 2.5% commission. Doc. 91-1 at 4. Ideacom argues that the paragraph should be stricken because it "is made to prove the content of a writing" in violation of FRE 1002, which states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required." Doc. 93 at 7.

An obvious problem with Ideacom's objection is that it neglected to acknowledge Tangen's commission statement, Exhibit "G" to his summary judgment opposition brief, which lists each of the disputed commissions contained in Paragraph 11. Doc. 91-7. The commission statement was authenticated by John Robb at his deposition testimony as having been prepared by Ideacom. Doc. 91-2 at 36. Even if it is not an original copy, it is nevertheless admissible pursuant to FRE 1003.

While the commission statement generally supports Tangen's affidavit, it does not state when or even if these accounts were paid in full, as Tangen alleges. Compare Doc. 91-1 at 4, ¶11 and Doc. 91-7. Therefore, while it

declines to strike Paragraph 11 altogether, the court nevertheless disregards the alleged payment dates that Tangen listed in the affidavit, with the exception of the "BROOKWOOD/WOMENSR5" sale, the "MT.VIEWMED/10TS01394" sale, the "NOLAND/SCFFAV1279" sale, and the "DCH LAUNDRY/VE3246" sale. Tangen attached separate invoices for these four sales, each of which includes a notation indicating that the account was paid and the date on which payment occurred. See Doc. 91-1 at 9, 12, and 13; Doc. 91-8.

### C. PAROL EVIDENCE

Ideacom seeks to strike paragraphs 5 and 9 of Tangen's affidavit as inadmissible parol evidence. Id. at 2, 6. Paragraph 5 contains an allegation that Tangen never sold a nurse call system to a customer for the "list price" as required by Paragraph 1 of the 2002 Agreement. Doc. 91-1 at 2. It also cited Robb's deposition testimony for the notion that commissions were based on the "usual sales price." Id. Paragraph 9 contains an allegation that Tangen was not, in fact, responsible for installation or troubleshooting of the call systems, contradicting Paragraph 1 of the 2002 Agreement. See id. at 6.

Despite the fact that these two affidavit statements contradict the 2002 Agreement, neither constitutes parol evidence because neither predates or is contemporaneous with the agreement. "The parol evidence rule provides that, absent some evidence of fraud, mistake, or illegality, a party to an unambiguous written contract cannot offer parol, or extrinsic, evidence of

6

**prior** or **contemporaneous oral agreements** to change, alter, or contradict the terms of the contract." Environmental Systems, Inc. v. Rexham Corp., 624 So.2d 1379, 1381 (Ala. 1993) (emphasis added) (citing Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Colafrancesco v. Crown Pontiac-GMC, Inc., 485 So.2d 1131, 1132-33 (Ala.1986). "The general doctrine [of the parol evidence rule is] … that all **previous** negotiations, conversations, and parol agreements are merged in the terms of the instrument." Hurst v. Nichols Research Corp., 621 So.2d 964, 966-67 (Ala. 1993) (quoting Sellers v. Dickert, 185 Ala. 206, 213 (1913) (emphasis added)). Here, Tangen's assertions about not selling call systems at a "list price" and his claim that his job responsibilities changed over time are allegations about events that happened subsequent to the 2002 Agreement, and therefore do not constitute parol evidence.

More generally, Ideacom also seeks to strike "all parole [sic] evidence assertions in Tangen's brief and exhibits," claiming that because Tangen never alleged fraud, mistake, or ambiguity, such evidence is therefore inadmissible. Doc. 93 at 10. Such a catch-all request incorrectly assumes that the court is obliged to hunt through Tangen's brief and exhibits for instances of parol evidence, like a pig in search of truffles. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). To the contrary, the onus is on Ideacom to cite each instance of alleged parol evidence.

### D. UNSUPPORTED ALLEGATIONS

Finally, Ideacom seeks to strike the following allegation from Tangen's brief:

> Tangen's salaried duties evolved and changed over time. With regard to the jobs on which Tangen claims a commission in this litigation, installation of the Responder 5 system was performed by laborers who came to the medical care facility and installed the system. (J. Robb dep. 96:1-8).

Ideacom correctly points out that the citation to Robb's deposition testimony does not support Tangen's assertion, and the court duly notes this fact.  Doc. 93 at 7.  However, the allegation above is not due to be stricken from the record simply because it is unsupported.  An allegation's lack of evidentiary support goes to the question of whether there is a genuine dispute of material fact; it does not render the allegation per se inadmissible.

Ideacom's citation of this court's memorandum opinion in <u>Vision Bank v. Swindall</u>, 2010 WL 3039601 (S.D. Ala. August 4, 2010), Doc. 93 at 8, is merely a regurgitation of the unsuccessful parol evidence argument which the court rejected, <u>supra</u>, and has no relevance to the challenged excerpt that Ideacom seeks to strike.  In <u>Swindall</u>, the non-movant defendant claimed that the court should not enforce the terms of a promissory note because of an alleged <u>contemporaneous</u> oral agreement between the parties.  <u>Swindall</u> at *3.  This court rejected the defendant's argument because he had not alleged that the promissory note was ambiguous, as required by the parol evidence

rule, thus rendering evidence of prior or contemporaneous agreements inadmissible.  Id.  Here, Tangen does not allege a prior or contemporaneous agreement.  Instead, he claims that his job responsibilities evolved subsequent to the 2002 Agreement.  Thus, Swindall is inapposite and the parol evidence rule does not apply.

Accordingly, Ideacom's motion to strike (Doc. 93) is **DENIED**.


### III. IDEACOM'S MOTION FOR SUMMARY JUDGMENT
### A. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See <u>Anderson,</u> 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States,</u> 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  <u>Burton v. City of Belle Glade,</u> 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment." <u>Hinesville Bank v. Pony Exp. Courier Corp.</u>, 868 F.2d 1532, 1535 (11th Cir. 1989) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies her initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Co.</u>, 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark,</u> Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may

not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 432 Fed. Appx. 867, 870 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## B. ALABAMA SALES COMMISSION ACT CLAIM (COUNT ONE)

Count One of Tangen's complaint alleges a violation of the Alabama Sales Commission Act, Ala.Code § 8-24-1, et. seq. ("§ 8-24-1," or "the Act"). Sales subject to §8-24-1 must be made at the wholesale level. See § 8–24–1(3). A wholesale transaction generally involves the sale of a tangible good for resale. See Black's Law Dictionary (9th ed.2009) (defining "wholesale" as the sale of goods or commodities usually to a retailer for resale, and not to the ultimate consumer"); see also Ala.Code § 40–23–1(a)(9) (Alabama's tax code

referring to the term "wholesale sale" as "a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale").

Tangen argues that he has "demonstrated ample evidence" that Ideacom violated the Act, yet in his summary judgment brief he specifies only two jobs which purportedly constitute such violations – Brookwood Women's Center ("Brookwood") and Mountain View Nursing Home ("Mountain View").[2] Doc. 91 at 17-18; <u>see</u> <u>also</u> Doc. 91-1 at 3-4.  Beyond these two sales, Tangen argues that "[t]here may be other jobs that [he] sold to customers who were not end users."  Doc. 91 at 18.  Indeed there may be; but Tangen cites no record evidence to support this speculation, and it is insufficient to defeat summary judgment.  <u>Cordoba v. Dillard's, Inc.,</u> 419 F.3d 1169, 1185 (11th Cir. 2005) ( "Speculation does not create a *genuine* issue of fact.") (citation omitted).

Perhaps sensing that he lacks supporting admissible facts, Tangen also states that he anticipates issuing subpoenas for additional testimony and documents at trial, "if necessary."  <u>Id.</u>  Yet discovery in this case closed on March 29, 2013.  Doc. 24.  Tangen has not requested any modification of the Rule 16(b) Scheduling Order and made no argument concerning good cause.

---

[2] Tangen attached to his affidavit additional invoices for call systems sold to the Village at Cook Springs and the DCH Medical Center.  Doc. 91-1 at 13-16. However, he did not mention either invoice in his discussion of the Act.

Thus, summary judgment on Count One is due to be granted in favor of Ideacom as to all sales that were not raised at summary judgment. This leaves the Brookwood and Mountain View sales for the court's consideration.

With regard to the Brookwood sale, the evidence does not support Tangen's assertion that he "sold a Responder 5 system to Bright Future Electric and that system was resold to Brookwood []." Doc. 91 at 18. The attached invoices indicate that the parts for the Responder V system were not billed to Bright Future Electric, but rather to the Medical Clinic Board of the City of Homewood in care of Bright Future Electric.[3] Doc. 91-1 at 6-7. Ideacom only directly billed Bright Future Electric for labor. <u>See</u> Doc. 91-1 at 8-9. Because § 8-24-1 applies only to the sale of tangible personal property, and the tangible personal property at issue here was purchased by the end user, i.e., Brookwood, there is no evidence to support Tangen's claims under Count One for this particular sale. <u>See</u> <u>Johnson v. Mossy Oak Properties, Inc.</u>, 2012 WL 5932437 at *5 (N.D. Ala., Nov. 27, 2012). The court also observes that Tangen's own deposition testimony undercuts his argument because he admitted that he did not have any document or basis to support his claim that Bright Future Electric resold the call system to the Brookwood. Doc. 92-1 at 4.

With regard to the Mountain View sale, on the other hand, there is

---

[3] Similarly, the invoices for the Village at Cook Springs and DCH Medical Center (Doc. 91-1 at 13-16) show that the call system was billed to The Special Care Facilities Financing Authority of Pell City, Alabama, and DCH Medical Center, directly.

evidence to support Tangen's assertion he sold a call system to Griffin Electric, which in turn installed the system at Mountain View. The attached invoice which Tangen cites is an Ideacom invoice for $123,685.48 and clearly states that Griffin Electric is the party that was billed for $81,854.82 worth of parts, plus labor. Doc. 91-1 at 12. This supporting evidence is undercut, as Ideacom points out, by Tangen's admission in his deposition testimony that he had no reason to believe that the purchasing healthcare providers listed in this case were not the providers that paid for the systems, which then installed them and allowed their patients to use them. Doc. 93 at 6. Nevertheless, "at the summary judgment stage the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Accordingly, the court finds that there is a genuine dispute of material fact with regard to whether §8-24-1 applies to Tangen's sale of the call system that was installed at Mountain View.

Therefore, Ideacom's motion for summary judgment on Count One is **GRANTED IN PART** as to all sales other than the Mountain View call system and **DENIED IN PART** as to that sale, only.

### C. BREACH OF CONTRACT CLAIM (COUNT TWO)

Under Alabama law, the elements of a breach of contract claim are (1)

a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1195 (Ala. 2003); see also Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala. 2002) (citing State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)).

### (1) EXISTENCE OF A VALID CONTRACT

#### (a) Inconsistent Pleadings By Ideacom

In its answer to Tangen's amended complaint, Ideacom denied the existence and validity of the 2002 Agreement. Doc. 28 at 1, ¶5. Despite this denial, Ideacom argues alternatively that Tangen did not perform under the same agreement. Doc. 87 at 18-19. Citing the principle of "quasi-estoppel by election," Tangen now seeks to foreclose Ideacom from arguing on the one hand that the 2002 Agreement does not exist, while on the other hand seeking to enforce its terms against him. Doc. 91 at 16. This argument is misplaced.

The Alabama Supreme Court defined the principle of quasi-estoppel by election as "the principle which prevents a party from drawing a judgment into question to the prejudice of his adversary after he has coerced its execution or accepted its benefits." Shannon v. Mower, 186 Ala. 472 (1914). In case after case, the Alabama Supreme Court has discussed this principle in the context of an appellant accepting the benefit of "[a] judgment, order, or decree," Todd v. Moore, 205 Ala. 451, 453, (1921), but not in the context of a litigant taking inconsistent positions at the pleading stage or at summary

judgment.  See also Estate of Henderson, 804 So.2d 191, 196 (Ala. 2001); Rice v. State Farm Fire and Cas. Co., 578 So.2d 1064-65 (Ala. 1991); Reeb v. Murphy, 481 So.2d 372, 374 (Ala. 1985); Sledge v. Liberty Nat. Life Ins. Co., 632 So.2d 1333-34 (Ala. 1994).  Thus, the court finds that quasi-estoppel by election does not preclude Ideacom from arguing these two inconsistent positions.  The court also notes that Federal Rule of Civil Procedure 8(d)(3) explicitly allows Ideacom to "state as many separate claims or defenses as it has, regardless of consistency."

Tangen also argues that "[i]t is impossible for this Court to construe or enforce the parties' intentions and meaning of the Employment Agreement … if Ideacom denies it entered the Agreement."  Doc. 91 at 16.  However, he offers no legal support for this contention, and the court notes that it can derive the parties' intentions from the provisions of the contract.  Smith v. Citicorp Person-to-Person Financial Centers, Inc., 477 So.2d 308 (Ala. 1985).

### (b) The 2009 Sales Compensation Program

Tangen argues that the 2009 Program (Doc. 14-2) constitutes either a unilateral contract offered by Ideacom to its sales representatives (assuming for the sake of argument that the 2002 Agreement does not exist) or a modification by Ideacom of the 2002 Agreement (assuming that the 2002 Agreement does exist and is valid).  Doc. 91 at 12-13.

A unilateral contract is created when one party makes an offer and the other party accepts by performing an act.  SouthTrust Bank v. Williams, 775

So.2d 184, 188 (Ala. 2000).  In a unilateral contract, "[o]nly one party makes an offer (or promise) which invites performance by another, and performance constitutes both acceptance of that offer and consideration." Id. at 188 (internal quotation marks and citation omitted).  A signature is not required because "[u]nder Alabama law there is no requirement that a contract contain a signature to demonstrate assent; the existence of a contract may be inferred from external and objective manifestations of assent." Taylor v. First N. Am. Nat'l Bank, 325 F.Supp.2d 1304, 1313 (M.D.Ala. 2004).

Tangen argues that Ideacom's presentation of the 2009 Program constituted an offer to modify the 2002 Agreement, and that Tangen's continued work throughout 2009, 2010, and 2011 constituted his acceptance and consideration.  Doc. 91 at 12-13; see also Doc. 91-1 at 3.

By contrast, Ideacom argues that the 2009 Program cannot constitute a unilateral agreement or modification because there was no mutual assent. Doc. 92 at 2.  To prove the absence of assent, Ideacom points to Tangen's deposition testimony in which he stated that he "did not really agree to [the 2009 Program] in [his] mind."  Doc. 87-6 at 49.  However, this interpretation takes Tangen's testimony out of context.  Tangen actually suggested the opposite of what Ideacom alleges here when he testified that he reluctantly assented to the new method of calculating commissions despite the fact that he disagreed with it.  Tangen testified that "my impression of [the 2009 Program] was that I could either go along with it or leave," and therefore, he

"went along with it."  Id. at 48, 50.

Even if Tangen's deposition testimony was not evidence of his assent, Ideacom does not address other evidence of mutual assent: namely, that Tangen continued to procure purchase orders for Ideacom for two-and-a-half years after the circulation of the 2009 Program, and Ideacom continued to pay Tangen commissions using the formula set forth in the 2009 Program. Doc. 91-1 at 3.

Ideacom also points to paragraph 8 of the amended complaint, which states that "[t]he modification did not purport to abrogate or restate paragraph 4 of the [2002] Agreement."  Doc. 87 at 2, 20 (citing Doc. 14 at 2). Ideacom holds this sentence up as proof that no modification took place, claiming that Tangen has "flatly contradicted" himself by seeking to enforce the 2009 Program as a modification of the 2002 Agreement.  Doc. 92 at 2, 7, 10, 11.  However, the court does not read this sentence to contradict anything in Tangen's argument.  Rather, paragraph 8 of the amended complaint simply observes that the 2009 Program is silent as to the 2002 Agreement, with no language explicitly abrogating paragraph 4.  See Doc. 14-2.  Other allegations contained in paragraph 8 of the amended complaint allege that a "written (unilateral) modification" changed the formula by which commissions were calculated, which is precisely the thrust of Tangen's summary judgment argument.  Id.  In short, the court sees no contradiction between Paragraph 8 of the amended complaint and Tangen's unilateral

contract/contract modification theory.

Ideacom's remaining arguments on the question of modification are similarly unconvincing.  For example, Ideacom points to paragraph 11 of the 2002 Agreement, which requires any amendment to be made "in writing and [be] signed by both parties."  Doc. 87 at 19; Doc. 92 at 10 (emphasis in original) (citing Doc. 14-1 at 3).  However, Alabama law provides that a written agreement may be modified by a subsequent oral agreement of the parties, "even where the contract contains a requirement that all modifications be in writing."  Ex parte Coleman, 861 So.2d 1080, 1084 (Ala. 2003) (citing Duncan v. Rossuck, 621 So.2d 1313, 1315 (Ala. 1993)).  Ideacom also argues that the merger clause contained in paragraph 10 of the 2002 Agreement precludes any subsequent modification because "a merger clause operates only to establish that a written agreement is a completely integrated document, into which all prior and contemporaneous negotiations are merged."  Doc. 87 at 19 (quoting Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 601 (Ala. 1999) (quotation marks omitted).  But this argument fails on its face because Ideacom issued the 2009 Program seven years after it signed the 2002 Agreement, and therefore, it is not a prior or contemporaneous negotiation.

Finally, Ideacom asserts that Tangen has failed to allege any ambiguity in the 2002 Agreement.  Doc. 92 at 11.  Claiming that "circumstances surrounding the contract are only considered where the terms

are ambiguous," Ideacom argues that the court should not look beyond the four corners of the 2002 Agreement, but rather enforce it as written and grant summary judgment.  Doc. 92 at 11-12 (quoting United States Fid. & Guar. Corp. v. Elba Wood Prods., Inc., 337 So.2d 944, 949 (Ala. 1997) (quotation marks omitted)).  However, Tangen's breach of contract claim does not require the court to interpret what the parties meant in the 2002 Agreement.  See United States Fid. & Guar. Corp at 1308.  Rather, his argument alleges that the 2002 Agreement itself was subsequently superseded.  Thus, no allegation of ambiguity is required.

Accordingly, the court finds that a genuine dispute of material fact exists as to whether the 2009 Program was a binding contract between Tangen and Ideacom, either as a modification of the 2002 Agreement or as a unilateral contract in its own right.

### (2) TANGEN'S PERFORMANCE

Ideacom next argues that Tangen did not perform under the 2002 Agreement because he was "unambiguously" required to sell call systems at a "list price" in order to receive a commission.  Doc. 87 at 18.  According to Ideacom, Tangen admits that the commissions at issue in this case do not involve "list price" sales, and therefore summary judgment is due to be granted in its favor.  Id.  However, Ideacom has offered no citation for Tangen's alleged admission.  Secondly, all of the commissions claimed by Tangen post-date the 2009 Program, which states that "total commission [is

20

to be] determined by final mark-up percent computed at end of [sic] job."

Doc. 14-2; Doc. 91-1 at 3, ¶8 and 4, ¶11.  In light of the court's conclusion,

supra, that there is a genuine dispute of material fact as to whether the 2009

Program either modified the 2002 Agreement or was a binding contract in its

own right, the court cannot say as a matter of law that the "list price"

requirement was still in place when Tangen obtained purchase orders for the

specific sales in dispute.[4]

Additionally, Ideacom claims that the 2002 Agreement

"unambiguously" required Tangen to perform installation and post-

installation job duties at the purchasing medical care facilities, but that he

resigned without completing these tasks for the sales at issue here.  Doc. 87

at 19, 21.  In response, Tangen argues that his job duties changed as Ideacom

began selling a newer, more advanced call system called the Responder V, for

which he had no technical certification.  Doc. 91 at 5.  He also claims that two

other Ideacom employees, Jon Childers and Ron Schrader, were trained and

---

[4] The same rationale applies to Ideacom's waiver provision argument.
Doc. 92 at 6.  Ideacom also asserts that it has not waived the "list price"
requirement, and points to paragraph 13 of the 2002 Agreement, which states
that "[t]he failure of either party to enforce any provision of this agreement
shall not be construed as a waiver of limitation of that party's right to
subsequently enforce and compel strict compliance with every provision of
[the 2002 Agreement]."  See Doc. 92 at 6 (quoting Doc. 14-1 at 3).  However,
because the court determined, supra, that a question of fact remains as to
whether or not the 2009 Program was a modification or unilateral contract,
then the pertinent question is not whether Ideacom failed to enforce the "list
price" requirement, but rather, whether the "list price" requirement was still
in place when Tangen obtained the purchase orders at issue in this case.

certified with the Responder V and assumed responsibility for supervising installation and post-installation troubleshooting, and these ceased to be part of Tangen's duties for the sales on which he claims commissions.  Id.; Doc. 91-1 at 2-3, ¶7.  As evidence of this assertion, Tangen points to his own affidavit testimony (id.) as well as a June 13, 2011, email addressed to Brookwood Medical Center from John Robb, Ideacom's president, in which Robb sought to assuage a client's concerns regarding Tangen's departure from Ideacom.  Doc. 91-4.  Robb stated that "[w]hile Alan has a lot of the history of the presales discussions, the installation and implementation [of the Responder 5 system] would have always been up to the people we have working on the project now … It will be Jeff and Ron who do have that knowledge."  Id.

Ideacom draws a different conclusion from the Robb email, claiming that it actually constitutes evidence of Tangen's breach because it shows that "Tangen was in Seattle working full time for a new company and not performing under the [2002 Agreement]."  Doc. 92 at 6 (emphasis in original).

The court does not share Ideacom's interpretation, and finds the Robb email to be more than a "mere scintilla" of evidence supporting Tangen's position.  See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quotation marks omitted).  Taken in concert with Tangen's affidavit testimony, Robb's statement that people other than Tangen "would have always" oversaw the installation and troubleshooting of the Brookwood system could lead a rational trier of fact to conclude that Tangen's duties no

longer included these tasks.

Finally, Ideacom argues that Tangen's H-1B visa required him to perform his job "as detailed in the [visa] petition," i.e., to supervise installation and troubleshooting of call systems that he sold.  Doc. 87 at 25.  However, all evidence in the record pertaining to Tangen's H-1B visa dates to 2007 or earlier.  See Doc. 87-2, 87-3, 87-4.  Thus, these documents tell the court nothing about Tangen's job responsibilities in 2009, 2010, and 2011.  Furthermore, no H-1B-related documents in the record refer to the Responder V system, for which Tangen testified he was not trained or certified to supervise installation or to assist in troubleshooting.  Doc. 91-1 at 2-3, ¶7.  Thus, Ideacom's H-1B argument does not rebut Tangen's affidavit testimony or the Robb email concerning Tangen's job duties.

Thus, the court finds that Ideacom has not met its summary judgment burden regarding Tangen's performance under the 2002 Agreement. Doc. 92 at 6.

### (3) IDEACOM'S BREACH

Ideacom's arguments with regard to its alleged breach are the same as its arguments with regard to Tangen's disputed performance, supra.  It claims that it was not obligated to pay Tangen for anything other than a "list price" sale.  Doc. 87 at 18; Doc 92 at 5.  It claims that Tangen did not supervise the installation or troubleshooting of the call systems for which he claims commissions.  Id. at 19, 21.  It claims that it did not waive provisions

of the 2002 Agreement.  All of these arguments were addressed by the court, above.

### (4) DAMAGES

Ideacom did not address the damages element of Tangen's breach of contract claim.  See Docs. 87 and 92.  Accordingly, this cannot be a basis for granting summary judgment.

### D. NEGLIGENCE CLAIM (COUNT THREE)

In the amended complaint, Tangen alleged that Ideacom negligently failed "to ascertain, accurately compute and/or remit payment for earned commission" upon the termination of his employment.  Doc. 14.  Ideacom argued in its summary judgment brief that this claim was due to be dismissed for "lack of substantial evidence of any public duty."  Doc. 87 at 28. Whatever the merits of this line of argument, Tangen did not respond to the argument or address it in any way in his opposition brief.  See Doc. 91. Therefore, Count Three is deemed abandoned, and summary judgment is due to be granted in favor of Ideacom on Tangen's negligence claim (Count Three).  See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that a claim included in a complaint but not raised at summary judgment is deemed abandoned).  See also Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D. Ala. 2008) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed

abandoned.") (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).

## VI. CONCLUSION

For the reasons discussed above, the court finds that Ideacom's motion for summary judgment is due to be **GRANTED IN PART** with regard to Count One, **DENIED** as to Count Two, and **GRANTED** as to Count Three. What remains for trial is the Count One allegation of a violation of the Alabama Sales Commission Act solely with regard to sale of the Mountain View call system, and the Count Two breach of contract claim.

**DONE** and **ORDERED** this 27th day of June 2013.


/s/ Callie V.S. Granade
**UNITED STATES DISTRICT JUDGE**